**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| VAN WILLIAMS, | ) | CASE NO. 1:15-CV-00184 |
| | ) | |
| Petitioner, | ) | JUDGE CARR |
| | ) | |
| v. | ) | MAGISTRATE JUDGE VECCHIARELLI |
| | ) | |
| BENNIE KELLY, Warden | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2).

Before the court is the petition of Van Williams ("Williams" or "Petitioner") for a writ of

habeas corpus filed pursuant to 28 U.S.C. § 2254.  Williams is in the custody of the

Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence

in the case of *State of Ohio vs. Williams*, Case No. CR-09-525486-A (Cuyahoga County

March 23, 2010).  (Doc. No. 7-1 at Exh. 12.)  For the reasons set forth below, it is

recommended that the petition be dismissed with prejudice.

**I. Factual Background**

The Petitioner's convictions stem from allegations that he sexually abused a

minor, "J.H."  A jury found Petitioner guilty of six counts of gross sexual imposition,

seven counts of kidnapping, five counts of rape, and five counts of unlawful sexual

conduct with a minor.  (Doc. No. 7-1, Exh. 11.)  The state appellate court reviewing

Petitioner's direct appeal noted the following relevant facts:

> [**P7] J.H.'s grandmother testified that she had custody of J.H.  They
> belonged to the same church as Williams and once J.H. joined the men's

choir, Williams began to mentor him, since her grandson did not otherwise have a "male role model" in his life.  The grandmother testified Williams took J.H. various places including to get his hair cut, to shop for video games, to the movies, and to see J.H.'s friends.  She testified that Williams was constantly buying J.H. gifts, such as video games, clothes, shoes, a guitar and guitar lessons, and he also gave J.H. money to do odd jobs around his house.

* * *

[**P9] .... [T]he trial court excused the jury and began the Evid.R. 404(B) hearing.[1]  A.B. took the witness stand, testified, and was subject to cross-examination.  A.B. testified that when he was 16 years old, he attended a local high school where Williams served as the swim coach.  A.B. was not close to his own father, but he joined the swim team and developed a close relationship with Williams.  In 1997, after a swim meet at a high school in Perry, Ohio, Williams took A.B. behind that school's concession stand, kissed A.B. and "fondled" him.  When the team returned to their school later that night, he and Williams engaged in oral sex in the locker room.  He testified that although he and Williams never engaged in anal intercourse, they engaged in oral sex two to three times per week in the school's locker room and that activity lasted until the end of the school year.  He further testified that the sexual activity was consensual.  After A.B.'s testimony, the trial court continued the evidentiary hearing at Williams's request because he had a witness to rebut A.B.'s testimony.

* * *

[**P11]  J.H., who was 16 years old at the time of trial, testified that he developed a close relationship with Williams after joining the men's choir at church.  He testified that Williams would often pick him up and take J.H. to his house.  Williams bought him gifts, including a watch, clothing, and a guitar.

[**P12]  J.H. testified that over time Williams became someone that he "completely trusted."  But Williams eventually began to molest him.  The first incident occurred in September 2008 when J.H. was 14 years old.

---

[1] Prior to trial, the state filed a "Motion to Admit Evidence Pursuant to Evidence Rule 404(B) and R.C. 2945.59," seeking to admit into evidence prior allegations of sexual abuse committed by Williams against a teenage boy, "A.B.," which Williams opposed.  (Doc. No. 7-1, Exhs. 5 & 6.) Defense counsel filed a motion *in limine* asking the trial court to prohibit any Evid.R. 404(B) testimony.  (Doc. No. 7-1, Exh. 8.)  Ultimately, the court allowed A.B. to testify.

J.H. testified he was sitting on a bed in Williams's house and the older man began to massage J.H.'s back.  Williams then massaged his legs and "groin area."  Williams told J.H. not to tell anyone because Williams could go to jail.

[**P13]  The next incident occurred later the same month. Williams massaged J.H.'s back and groin area.  The next incident occurred in Williams's basement when Williams was giving J.H. a haircut.  J.H. testified that during the haircut Williams put the clippers down, began to massage J.H.'s back, pulled J.H.'s pants down and bent him forward, and then "[stuck] his private part in my behind."  When he was "done," J.H. explained, Williams got a cold rag and wiped J.H.'s buttocks.  J.H. testified that the sexual intercourse hurt.

[**P14]  The next act of anal intercourse occurred in Williams's bedroom and was also preceded by Williams massaging J.H.'s back and groin area.  This time, when Williams touched J.H.'s penis, J.H. asked him why he was doing this.  Williams replied "he wasn't getting any from his wife." During this incident, Williams abruptly stopped the intercourse, thinking his wife was coming home.  When Williams realized they were still alone, he took J.H. to the basement and resumed anal intercourse.  J.H. testified Williams told him he would stop "doing this to me" before J.H. turned 15 years old.

[**P15]  Then next time Williams assaulted him, Williams used Vaseline on his (Williams's) penis. J.H. testified that the last assault happened in January 2009 when he was 15 years old, in the computer room at Williams's house.

[**P16]  J.H. testified that he was confused if sexual activity was something boys were supposed to do with older men. He stated he did not put up much resistance because he was afraid Williams would hurt him.

[**P17]  Shawana Cornell, a CCDCFS social worker, testified that she was assigned to J.H.'s case after the county received a report that J.H. had been sexually abused.  The state inquired about the conversation she had with Williams as part of her investigation.  Cornell testified, over defense counsel's objection, that Williams "said he was accused of this about 12 years ago, and that the charge was taken down to a misdemeanor assault."  During a subsequent conversation with Williams, Cornell testified that she asked Williams "if he would mind telling me about the allegation from 12 years ago with the other boy, and [he] did not want to tell me about that."  Cornell testified Williams denied any sexual activity occurred with J.H. and did not know why the boy would make such an allegation.

3

*State v. Williams*, 195 Ohio App. 3d 807, 813 (Ohio Ct. App. 2011) (footnotes omitted) ("*Williams I*").[2]

## II. State Procedural History

### A.    State Trial Court Proceedings

During its May 2009 term, a Cuyahoga County grand jury issued an indictment charging Williams with 12 counts of rape in violation of Ohio Revised Code ("O.R.C.") § 2907.02(A)(2), 12 counts of unlawful sexual conduct with a minor in violation of O.R.C. § 2907.04(A), 12 counts of kidnapping in violation of O.R.C. § 2905.01(A)(4), 24 counts of gross sexual imposition in violation of O.R.C. § 2907.05(A)(1), and one count of intimidation of a crime victim or witness in violation of O.R.C. § 2921.04(A).  (Doc. No. 7-1, Exh. 1.)  All criminal activity was alleged to have occurred between November 1, 2008, and April 30, 2009, when the victim was 14 and 15 years old.  (*Id.*)  On June 30, 2009, Williams entered a plea of "not guilty."  (Doc. No. 7-1, Exh. 2.)

On July 8, 2009, Petitioner, through trial counsel Robert Smith III, filed a Motion for Notice of Evidence.  (Doc. No. 7-1, Exh. 3.)

On July 29, 2009, the State filed a Bill of Particulars.  (Doc. No. 7-1, Exh. 4.)

On February 16, 2010, Williams filed a motion to dismiss the indictment, arguing it did not sufficiently set forth any specific sexual conduct.  (Doc. No. 7-1, Exh. 7.)

On February 17, 2010, the case proceeded to a trial by jury.  (Doc. No. 9, Tr. 25.) After the State rested, Williams made a motion for a mistrial, which was denied.  (Doc.

---

[2]  Many of these same facts are quoted in the state appellate court's decision after a remand from the Ohio Supreme Court.  *State v. Williams*, 2013-Ohio-4471 at ¶8, 2013 Ohio App. LEXIS 4740 (Ohio Ct. App., Oct. 10, 2013) ("*Williams II*").

4

No. 9, Tr. 316, 318.)  Williams also filed a Rule 29 motion for judgment of acquittal.

(Doc. No. 7-1, Exh. 9.)  The trial court granted the motion with respect to the following:

Counts 6 through 12 (rape), 18 through 24 (unlawful sexual conduct with a minor), 32

through 36 (kidnapping), and 43 through 61 (gross sexual imposition and intimidation of

a witness).  (*Id.*)  In addition, the State's motion amend the indictment to comport with

the evidence at trial was granted.[3]  (*Id.*)

On February 23, 2010, the jury returned a verdict finding Williams guilty of six

counts of gross sexual imposition, seven counts of kidnapping, five counts of rape, and

five counts of unlawful sexual conduct with a minor.  (Doc. No. 7-1, Exh. 11.)  On March

23, 2010, the trial court imposed a total prison sentence of 20 years.  (Doc. No. 7-1,

Exh. 12.)

**B.**   **Direct Appeal**

**1. State Appellate Court's First Decision**

Williams, through new counsel Craig T. Weintraub, filed a notice of appeal with

the Eighth District Court of Appeals ("state appellate court").  (Doc. No. 7-1 at Exh. 13.)

He asserted the following assignments of error on appeal:

> I.     Appellant was denied his constitutional right to a fair
>        trial because the trial court erred by admitting highly
>        prejudicial evidence and by not complying with Ohio
>        Evidence Rule 403.
>
> II.    Appellant was denied his Federal and State due
>        process rights to notice because he was tried for
>        offenses not contained in the indictment and the
>        indictment did not charge him with sufficient

---

[3]  The trial court renumbered the remaining 23 counts to reflect the chronological order of
the acts adduced by the testimony.  (Doc. No. 7-1, Exh. 10.)

5

specificity.

III.    The trial court erred in failing to grant Appellant's motion for judgment of acquittal on all charges because the evidence presented was not legally sufficient to support a conviction.

IV.    The verdict was against the manifest weight of the evidence.

V.    The court abused its discretion and committed cumulative errors that violated Appellant's constitutional rights to a fair trial and due process.

VI.    Appellant was denied his constitutional right as guaranteed by the United States and Ohio Constitutions to effective assistance of counsel when his attorney failed to timely object to hearsay testimony and failed to move for a mistrial.

(Doc. No. 7-1 at Exh. 14.)

On June 9, 2011, the state appellate court, *sua sponte*, found a conflict existed in the district concerning the admissibility of similar acts "to demonstrate modus operandi or scheme, plan or system when the evidence is not part of the immediate background of the present crime and the offender's identity is not at issue."  (Doc. No. 7-2, Exh. 16.)

On November 23, 2011, the state appellate court, *en banc*, sustained the first assignment of error, overruled the third assignment of error, found that the remaining assignments of error were moot, and reversed and remanded for a new trial.  (Doc. No. 7-2, Exh. 17.)

**2.  State's Appeal to the Supreme Court of Ohio**

On December 15, 2011, the State of Ohio filed a notice of appeal with the Supreme Court of Ohio.  (Doc. No. 7-2, Exh. 18.)  In its memorandum in support of

6

jurisdiction, as well as in its merit brief, the State set forth the following propositions of law:

> I.      Other acts of evidence of prior instances of sexual abuse committed by a defendant are admissible to show his intent, where intent is an element of the statute and both acts are committed against teenage boys of similar ages.

> II.     Other acts evidence demonstrating that a defendant exhibited a pattern of isolating certain types of victims and then abused a position of authority to engage in grooming behaviors for the purpose of sexual gratification is admissible to show unique, identifiable plan, independent of whether it shows identity.

(Doc. No. 7-2, Exhs. 19 & 21.)  Williams filed a brief in opposition.  (Doc. No. 7-2, Exh. 23.)  The State filed a reply.  (Doc. No. 7-2, Exh. 24.)

On December 6, 2012, the Supreme Court of Ohio issued an opinion reversing the judgment of the state appellate court and reinstating the judgment of the trial court. (Doc. No. 7-2, Exh. 25; *State v. Williams*, 979 N.E.2d 1290,134 Ohio St. 3d 521, 2012-Ohio-5695 (Ohio 2012)).  Williams filed a motion for reconsideration requesting the Ohio Supreme Court to issue an order remanding the case to the state appellate court for consideration of his remaining assignments of error, which had been denied as moot.  (Doc. No. 7-2, Exh.  26.)  The motion for reconsideration was granted and the case remanded "for consideration of the remaining assignments of error."  (Doc. No. 7-2, Exh. 28.)

### 3.  State Appellate Court's Second Decision

On August 30, 2013, the state appellate court referred the case to the merit panel for further proceedings in accordance with the remand from the Ohio Supreme Court.  (Doc. No. 7-2, Exhs. 29 & 30.)

7

On October 10, 2013, the state appellate court issued an opinion overruling Williams's remaining assignments of error, specifically his second, fourth, fifth, sixth and seventh assignments of error and affirming the trial court's judgment.  (Doc. No. 7-2, Exh. 31.)

### 4. Petitioner's Appeal to the Supreme Court of Ohio

On November 25, 2013, Williams, through counsel, filed a notice of appeal with the Supreme Court of Ohio.  (Doc. No. 7-2, Exh. 32.)  In his memorandum in support of jurisdiction, Williams set forth the following propositions of law:

I.   A Defendant in a criminal case is denied due process of law, the rights to notice and opportunity to defend, and freedom from double jeopardy when the indictment does not set forth the charges against him with sufficient specificity in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution.

II.  Failure of counsel to object to damaging hearsay testimony and to also fail to move for a mistrial dismissed as reasonable trial strategy by a court of appeals without proper analysis deprives a Defendant due process of law and protections afforded by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

III. Intentional introduction of inflammatory and highly prejudicial evidence by the state constitutes prosecutorial misconduct and requires reversal pursuant to the Sixth and Fourteenth Amendments to the Constitution of the United States.

IV.  The cumulative effect of errors worked to deprive the Appellant of a fair trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.

(Doc. No. 7-2, Exh. 33.)

On March 12, 2014, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4).  (Doc. No. 7-2, Exh. 35.)

8

### III. Proceedings in This Court

**A.     Habeas Petition**

In January 29, 2015, Petitioner filed his habeas petition in this Court.  (Doc. No.

2.)  He asserts the following grounds for relief:

> **GROUND ONE**: Petitioner was deprived his constitutional right to due
> process, to his right to fundamental fairness at trial and to a fair trial when
> the trial court failed to properly address the 404(B) evidence prior to its
> introduction into evidence at trial and by admitting such evidence.
>
> **GROUND TWO**: Petitioner was denied his constitutional due process
> rights of notice, his ability to protect himself from double jeopardy, and his
> right to a fair trial based on the State's defective indictment, which failed to
> charge him with sufficient specificity by using incorrect dates and carbon
> copy charges.
>
> **GROUND THREE**: Petitioner was deprived of his right to the effective
> assistance of counsel under the Sixth and Fourteenth Amendments when
> counsel failed to move for a mistrial or request a curative instruction.
>
> **GROUND FOUR**: The cumulative effect of trial error renders the
> Petitioner's trial unfair and his sentence arbitrary and unreliable under the
> Sixth, Eighth and Fourteenth Amendments.

(Doc. No. 2.)

### IV. Procedural Issues

**A.     Jurisdiction**

A state prisoner may file a § 2254 petition in "the district court for the district

wherein such person is in custody or in the district court for the district within which the

State court was held which convicted and sentenced him." 28 U.S.C. § 2241(d).  The

Court of Common Pleas of Cuyahoga County, Ohio sentenced Petitioner.  (Doc. No. 7-

1, Exh. 12.)  Cuyahoga County is within this Court's geographic jurisdiction. *See* 28

U.S.C. § 115(b).  Accordingly, this Court has jurisdiction over Petitioner's petition.

9

### B.    Exhaustion and Procedural Default

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus.  *See* 28 U.S.C. § 2254(b) and (c); *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. McMackin*, 935 F.2d 790, 793 (6th Cir. 1991).  If any state procedures for relief remain available, the petitioner has not exhausted his state remedies, and a federal court must dismiss his petition.  *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).  The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims.  *See Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).  Fair presentment of a claim in a federal constitutional context requires a petitioner to apprise the state courts that his claim is a federal claim, rather than "merely . . . an issue arising under state law."  *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).

Similarly, a federal court may not review  "contentions of federal law . . .  not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure."  *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  When a petitioner "has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman v. Thompson*,

501 U.S. 722, 750 (1991).

If the State argues that a petitioner has procedurally defaulted, the Court must

conduct a four-step analysis to determine whether the petitioner has indeed defaulted

and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state
> procedural rule that is applicable to the petitioner's claim and
> that the petitioner failed to comply with the rule. . . . Second,
> the court must decide whether the state courts actually
> enforced the state procedural sanction.  . . . Third, the court
> must decide whether the state procedural forfeiture is an
> "adequate and independent" state ground on which the state
> can rely to foreclose review of a federal constitutional claim.
> . . . This question generally will involve an examination of the
> legitimate state interests behind the procedural rule in light
> of the federal interest in considering federal claims. . . .
> [Fourth, if] the court determines that a state procedural rule
> was not complied with and that the rule was an adequate
> and independent state ground, then the petitioner must
> demonstrate . . . that there was "cause" for him to not follow
> the procedural rule and that he was actually prejudiced by
> the alleged constitutional error.

Maupin v. Smith, 785 F.2d 135, 138 (6th Cir. 1986).

The Respondent asserts that Williams failed to fairly present the substance of

ground one before the state courts as a distinct federal claim.  (Doc. No. 7 at pp. 24-25.)

Petitioner's brief fails to meaningfully address this argument, save for the conclusory

assertion that the ground one was preserved by arguing a deprivation of the right to a

fair trial.  (Doc. No. 11 at p. 11.)

In his first ground for relief, Williams contends that he was deprived of his

constitutional right to due process and a fundamentally fair trial when the trial court

admitted "404(B) evidence" and also by failing to "properly address" this evidence

before its introduction.  (Doc. No. 2 at 10.)  In his argument to this Court, Williams

ostensibly relies on *United States v. Lovasco*, 431 U.S. 783, 97 S. Ct. 2044, 52 L. Ed. 2d 752 (1977) and *Dowling v. United States*, 493 U.S. 342, 110 S. Ct. 668, 107 L. Ed. 2d 708 (1990).[4]   Before the state appellate court, Williams's first assignment of error is the closest approximation to his first ground for habeas relief.   In the state appellate court, Williams argued as follows:

> Appellant was denied his constitutional right to a *fair trial* because the trial court erred by admitting highly prejudicial evidence and by not complying with Ohio Evidence Rule 403.

(Doc. No. 7-1, Exh 14) (emphasis added).  In his appellate brief, Williams asserted that the evidence of prior bad acts should have been barred by the operation of Ohio Evid. Rules 403 and 404(b).  (*Id.*)  Williams framed his argument before the state appellate court as solely one based on state law, and furthermore, relied solely on Ohio case law. (Doc. No. 7-1, Exh. 14 at pp. 12-21.)

When the state appellate court in *Williams I* sustained the first assignment of error, it confined its analysis solely to Ohio law.  The State appealed the decision in *Williams I*, and Williams's brief on the merits before the Ohio Supreme Court again argued only violations of state law.[5]  (Doc. No. 7-2, Exh. 23 at pp. 6-19.)  The Supreme

---

[4]  The *Lovasco* case, cited in Petitioner's filings with this Court, is not particularly relevant as that decision addressed only whether "compelling respondent to stand trial after the Government delayed  indictment to investigate further violates ... 'fundamental conceptions of justice....'" 431 U.S. at 790.  The *Lovasco* decision did not involve the admissibility of 404(b) or similar acts evidence and its impact on a fundamentally fair trial.  The *Dowling* decision primarily relied on *Federal* Rule of Evidence 404(b). 493 U.S. at 343-52. Without elaborate analysis, the *Dowling* court did conclude that the admission of  testimony, which implicated conduct of which the defendant had previously been acquitted, did not violate the due process test of fundamental fairness. *Id.* at 352-54. (noting that the "category of infractions that violate 'fundamental fairness'" has been defined "very narrowly").

[5]  The brief on the merits before the Ohio Supreme Court does cite two federal cases. Williams cites *United States v. Sebolt*, 460 F.3d 910 (7th Cir. 2006) as acknowledging the potentially

Court of Ohio found that "[e]vidence that Williams had targeted teenage males who had no father figure to gain their trust and confidence and groom them for sexual activity with the intent of sexual gratification may be admitted to show the plan of the accused and the intent for sexual gratification."  *Williams*, 134 Ohio St.3d at 527.  Accordingly, the judgment of the appellate court was reversed.  On remand, only the previously unaddressed assignments of error were considered.  (Doc. No. 7-2, Exhs. 25 & 31.)

A claim is "fairly presented" where the petitioner "asserted both the factual and legal basis for his claim to the state courts."  *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000) (citations omitted).  In *Beach v. Moore,* the Sixth Circuit Court of Appeals observed that a petitioner can "fairly present" his claim to the state courts in one of four ways:

> (1) reliance upon federal cases employing constitutional analysis;
>
> (2) reliance upon state cases employing federal constitutional analysis;
>
> (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or
>
> (4) alleging facts well within the mainstream of constitutional law.

343 Fed. App'x 7, 10-11 (6th Cir. 2009) (quoting *Whiting v. Burt*, 395 F.3d 602, 613 (6th Cir. 2005)).

---

prejudicial character of prior sexual misconduct under Federal Rule of Evidence 404(b).  (Doc. No. 7-2, Exh. 23 at p. 10.)  Notably, the *Sebolt* decision found evidence of defendant's prior sexual conduct was admissible to prove motive and identity.  Williams also cites *Huddleston v. United States*, 485 U.S. 681 (1988) for the proposition that limiting instructions should accompany evidence admitted pursuant to Fed. R. Civ. P. 404(B).  Neither of these cases were cited for the proposition that admission of such evidence during a state criminal trial, with or without limiting instructions, would violate any clearly established right under the United States Constitution or deprive a defendant of a fundamentally fair trial.

13

Petitioner's brief before the state appellate court fails every method of the Sixth Circuit's test to adequately raise a deprivation of a fundamentally fair trial under federal law: (1) he did not rely upon federal cases employing a constitutional analysis concerning whether the admission of prior bad acts testimony violated his right to a fundamentally fair trial; (2) he did not cite state cases performing a similar analysis of federal law;[6] (3) he did not phrase his claim in terms of federal constitutional law or sufficiently allege the denial of a specific constitutional right; and, (4) he did not allege facts within the mainstream of either due process or the right to a fundamentally fair trial.

With regard to the third method of fair presentation, Williams's state court brief does generally allege that he was denied his constitutional right to a fair trial.  (Doc. No. 7-1, Exh. 14.)  However, it is well established that "'[g]eneral allegations of the denial of rights to a fair trial and due process do not fairly present claims that specific constitutional rights were violated'; the claim must allege the denial of a specific constitutional right."  *Williams v. Wolfenbarger*, 513 Fed. App'x 466, 468 (6th Cir. 2013) (*quoting Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006)).

Therefore, Petitioner defaulted his first ground for relief because he did not fully and fairly present it to Ohio courts as a distinct federal claim and could no longer do so as he has exhausted his appeals.  Further, Williams does not show cause and prejudice

---

[6] Petitioner's Traverse does not argue that the state cases upon which he relied in framing his first assignment of error before the state appellate court employed federal constitutional analysis.  (Doc. No. 11.)  Nonetheless, the Court has reviewed the state cases cited in Williams's appellate brief (Doc. No. 7-1, Exh. 14 at pp. 12-21) and determined that it does not contain any federal constitutional analysis concerning the admission of prior bad acts evidence.

for his default or demonstrate that a fundamental miscarriage of justice would result if the default is enforced.  For these reasons, Petitioner's first ground for relief should be dismissed as defaulted for lack of fair presentation.

Nevertheless, as discussed in the "Merits" section below, ground one would also fail on the merits.

### V. The Merits of Petitioner's Remaining Claims[7]

The Antiterrorism and Effective Death Penalty Act of 1996 ( "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Generally, where a state court has reviewed a ground for relief, a writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence. *See Carey v. Musladin*, 549 U.S. 70 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000).  Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction.  *See Carey*, 549 U.S. at 74.

Courts must give independent meaning to the phrases "contrary to" and

---

[7]  Respondent concedes that the petition appears to be timely.  (Doc. No. 7 at p. 11.)

"unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.  Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result.  *Id.* at 405-06.  A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand.  *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).  "In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been objectively unreasonable."  *Id*. at 520-21 (internal citations and quotation marks omitted).

By its own terms, however, AEDPA's standard of review is applicable only to claims "adjudicated on the merits in state court."  Where a state court failed to consider the merits of a properly raised claim, however, "the deference due under AEDPA does not apply."  *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003).  Rather, where no state court has considered the merits of the claim,  "this court reviews questions of law

16

and mixed questions of law and fact *de novo*." *Id*.  Here, as discussed in Section

IV(B)(1)(b), *supra*, the state appellate court erred when it declined to consider the

claims of ineffective assistance of counsel raised in Petitioner's Rule 26(B) motion.

Petitioner reiterates those claims in his second ground for relief.  Because the state

courts did not adjudicate Petitioner's ineffective assistance of appellate counsel claims

on the merits, this Court reviews his second ground for relief *de novo*.  The state courts

reviewed the claims set forth in his third and fifth grounds for relief on the merits.

Accordingly, this Court applies AEDPA's deferential standard of review to those grounds

for relief.

**A.      Ground One: Admission of Prior Bad Acts**

In his first ground for relief, Williams contends that he was deprived of his

constitutional right to due process and a fundamentally fair trial when the trial court

admitted "404(B) evidence" and also by failing to "properly address" this evidence

before its introduction.  (Doc. No. 2 at 10.)  Even if not defaulted for lack of fair

presentation, as discussed above, ground one would fail on the merits.

First, to the extent ground one of the petition attempts to argue that the state

courts incorrectly applied state law or evidentiary rules, such a claim is not cognizable

on federal habeas corpus review. *See, e.g.*, *Estelle v. McGuire*, 502 U.s. 62, 67-68

(1991) ("Today, we reemphasize that it is not the province of a federal habeas court to

reexamine state-court determinations on state-law questions.")  Furthermore, the

admission of prior bad acts evidence does not run afoul of the United States

Constitution or violate any clearly established federal law as determined by the rulings

17

of the United States Supreme Court.  As the Sixth Circuit has stated:

> [T]he admission of prior bad acts evidence was not contrary to clearly established Supreme Court precedent [because] [t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence.
>
> * * *
>
> While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, it has not explicitly addressed the issue in constitutional terms.  Accordingly, the district court correctly found that there is no Supreme Court precedent that the trial court's decision could be deemed "contrary to," under AEDPA.

*Bugh v. Mitchell*, 329 F.3d 496, 512-513 (6th Cir. 2003) (citations omitted); *accord Jefferson v. Warren*, 2015 U.S. App. LEXIS 22581 (6th Cir. Dec. 15, 2015); *Meriweather v. Burton*, 2015 U.S. App. LEXIS 20917 (6th Cir. Nov. 24, 2015); *Bryan v. Bobby*, 114 F. Supp. 3d 467, 541 (N.D. Ohio 2015) (Carr, J.) (because the Supreme Court has never held that the use of "bad acts" or "other acts" to establish a defendant's character or propensity to commit such acts violates the Due Process Clause, the state court's decision could not possibly have been contrary to or an unreasonable application of non-existent precedent).

Under this precedent, Williams could not show he is entitled to habeas relief on the basis that the state court admitted evidence of bad acts – even if it tended to show his propensity to commit such crimes.  Petitioner's attempt to cast his 404(B) argument as a deprivation of a fundamentally fair trial is unavailing.  In fact, *Burger v. Woods*, a case upon which Petitioner relies, does not help his argument.  515 Fed. App'x 507, 509 (6th Cir. 2013) ("[S]econd-guessing evidentiary rulings is not our job, at least not in th[e] [habeas] context....  We may grant relief only if a state court's evidentiary ruling 'is so

egregious that it results in a denial of fundamental fairness,' thereby violating the Fourteenth Amendment's due process guarantee.") (*citing Bugh*, 329 F.3d at 512).  The *Burger* court explained that it was unaware of any clearly established Supreme Court precedent suggesting that the admission of "improper-character-evidence" or prior bad acts (such as previous robbery charges) was "the kind of foundational unfairness or arbitrariness needed to show that a flawed state court evidentiary ruling rises to the level of a due process violation [which] is not a broad category." 515 Fed. App'x at 510. No matter how Williams attempts to frame his argument in ground one, the admission of prior bad acts evidence simply does not violate any clearly established federal law as set forth by the United States Supreme Court and, therefore, cannot support a viable claim for habeas relief.

**B.  Ground Two: Use of "Carbon Copy" Indictments/Insufficient Notice**

In his second ground for relief, Williams asserts that the 61-count indictment that charged him with 12 counts of rape, 12 counts of unlawful sexual conduct, 12 counts of kidnapping, and 24 counts of gross sexual imposition were "carbon copy" charges in that the charges were undifferentiated.  (Doc. No. 2 at pp. 15-21.)  The counts set forth in the indictment tracked the statutory elements of the offenses and identified an approximate range of dates during which the offenses allegedly occurred, but they did not include particular facts to differentiate one alleged violation from another.  Petitioner argues that this method of charging violated his right to notice of the charges against him as well as the right to protection from double jeopardy.  (*Id*.)

The state appellate court, after remand from the Supreme Court of Ohio,

19

addressed Williams's claim that the indictment did not charge him with sufficient

specificity as follows:

> [*P11]  The original 61-count indictment alleged that the sexual acts
> occurred between November 1, 2008, and April 30, 2009.  At trial, J.H.
> testified that some of the sexual acts occurred in September and October
> 2008.  Over defense counsel's objection, the trial court amended the dates
> of the indictment to reflect J.H.'s testimony.  Williams now claims that the
> trial court's amendment of the indictment meant that he was tried for
> offenses that were never presented to the grand jury.  We disagree.
>
> [*P12]  This court has held that "specificity as to the time and date of an
> offense is not required in an indictment."  *State v. Bogan*, 8th Dist.
> Cuyahoga No. 84468, 2005-Ohio-3412, ¶10, citing *State v. Shafer*, 8th
> Dist. Cuyahoga No. 79758, 2002-Ohio-6632.  Pursuant to R.C. 2941.03,
> "'an indictment or information is sufficient if it can be understood
> therefrom: * * * (E) That the offense was committed at some time prior to
> the time of filing of the indictment.'"  *Bogan* at *id*. quoting *Shafer* at ¶17-18.
> An indictment is not invalid for failing to state the time of an alleged
> offense or doing so imperfectly; the state's only responsibility is to present
> proof of offenses alleged in the indictment, reasonably within the time
> frame alleged.  *Bogan* at *id*.
>
> [*P13]  This is especially the case where the victim is a child victim of
> repeated sexual assault, as was the victim in this case:
>
> > [W]here such crimes constitute sexual offenses against children,
> > indictments need not state with specificity the dates of alleged
> > abuse, so long as the prosecution establishes that the offense was
> > committed within the time frame alleged. This is partly due to the fact
> > that the specific date and time of the offense are not elements of the
> > crimes charged. Moreover, many child victims are unable to
> > remember exact dates and times, particularly where the crimes
> > involved a repeated course of conduct over an extended period of
> > time.
>
> (Citation omitted.)  *State v. Yaacov*, 8th Dist. Cuyahoga No. 86674,
> 2006-Ohio-5321, ¶17.  Simply put, when dealing with the memory of a
> child, reasonable allowances for inexact dates and times must be made.
> *State v. Barnecut*, 44 Ohio App.3d 149, 152, 542 N.E.2d 353 (5[th] Dist.
> 1988).
>
> [*P14]  In addition, Crim.R. 7(D) provides that a trial court may amend an
> indictment any time before, during, or after a trial to correct "any defect,

20

imperfection, or omission in form or substance,  or of any variance with the evidence, provided no change is made in the name or identity of the crime charged."  When amendments are permitted, a criminal defendant is entitled to a discharge of the jury and a reasonable continuance under Crim.R. 7(D) only if (1) the amendment is to the substance of the indictment, and (2) the amendment prejudices the defense.

[*P15]  Here, Williams has not been able to show that he was prejudiced by either the lack of specificity in the indictment or the amendment to the indictment.  Williams outright denied any sexual contact with J.H. Therefore, amending the indictment to include conduct that occurred in September and October 2008 cannot be said to have improperly prejudiced him.  Moreover, the trial court did allow a continuance for defense counsel to investigate the date change.

*Williams II*, 2013-Ohio-4471 at ¶¶10-16.

The state appellate court ultimately concluded that the indictment properly apprised Williams of the charged offenses.  Williams's challenge to the State's use of so-called "carbon copy" indictments potentially implicates both Fifth and Sixth Amendment issues.

The Fifth Amendment to the U.S. Constitution provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury . . . ." and while "[a] federal grand jury indictment may use the words of a statute to generally describe the offense, 'it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offen[s]e, coming under the general description, with which he is charged.'" *Coles v. Smith*, 577 Fed. App'x 502, 506 (6th Cir. 2014), *cert. denied*, 135 S. Ct. 985 (2015) (*quoting Hamling v. United States*, 418 U.S. 87, 117-18 (1974)).  The Fifth

21

Amendment's indictment requirements, however, are not applicable to the States.[8]
*Coles*, 577 Fed. App'x at 506-507 ("Because the Supreme Court has not imposed the Fifth Amendment requirements for federal indictments on state charging instruments, our court has recognized that 'there is no constitutional right in a state prosecution to a grand jury indictment with particular specificity.'") (*quoting Williams v. Haviland*, 467 F.3d 527, 534 (6th Cir. 2006)). Petitioner cannot show that state courts violated his Fifth Amendment rights or unreasonably applied clearly established federal law by finding that the indictments in this case were sufficient.

Although the United States Supreme Court has not applied the specificity requirements of the Fifth Amendment or the applicable federal case law governing federal prosecutions to the States, it has applied the notice requirements of the Sixth Amendment to the States through the Fourteenth Amendment. *Coles*, 577 Fed. App'x at 506-507 (citing *Duncan v. Louisiana*, 391 U.S. 145, 149 (1968); *In re Oliver*, 333 U.S. 257, 273 (1948)).

> The Sixth Amendment provides in part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation." U.S. Const. amend. VI. "**No principle of procedural due process is more clearly established than that notice of the specific charge**, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal." *Cole v. Arkansas*, 333 U.S. 196, 201, 68 S. Ct. 514, 92 L. Ed. 644 (1948). A defendant "cannot incur the loss of liberty for an offense without notice and a meaningful opportunity to defend." *Jackson v. Virginia*, 443 U.S.

---

[8] In *Coles*, the Sixth Circuit discusses the specificity requirements for indictments in federal prosecutions as discussed in *Hamling*, 418 U.S. at 117-18; *Russell v. United States*, 369 U.S. 749, 763-64 (1962); and *United States v. Cruikshank*, 92 U.S. 542, 558 (1875) – all three cases on which Williams relies – but ultimately found that these requirements are not binding in state prosecutions. Accordingly, Williams's reliance on these cases is misplaced.

307, 314, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).

Coles, 577 Fed. App'x at 506-507 (emphasis added) (further noting that, under the Fourteenth Amendment, the States must adhere to the Fifth Amendment's prohibition against double jeopardy); *see also* Watson v. Jago, 558 F.2d 330, 338-39 (6th Cir. 1977) ("[U]nder the Fourteenth Amendment, states are obliged to observe the prohibition against double jeopardy.")  These federal constitutional principles are "embedded in Ohio state law." *Id.*, citing State v. Sellards, 17 Ohio St. 3d 169, 17 Ohio B. 410, 478 N.E.2d 781, 783 (Ohio 1985) (an accused charged with a felony offense "is entitled to an indictment setting forth the 'nature and cause of the accusation' pursuant to Section 10, Article I of the Ohio Constitution and the Sixth Amendment to the United States Constitution.")

Despite being represented by counsel, Williams has failed to meaningfully explain how the state court's decision violated the requisite notice or the prohibition against double jeopardy.  Williams's notice and double jeopardy claims rely substantially on the Sixth Circuit's decision in Valentine v. Konteh, 395 F.3d 626 (6th Cir. 2005). (Doc. Nos. 2 & 11.)  The indictments issued by the grand jury in Williams's case are similar in form to the indictments issued in *Valentine*.  In *Valentine*, the Sixth Circuit found that "multiple, undifferentiated charges in the indictment violated Valentine's rights to notice and his right to be protected from double jeopardy."[9]  395 F.3d at 631.  The dissent identified a crucial deficiency in the majority's analysis: "that no Supreme Court

_____

[9]  The *Valentine* decision's finding that the petitioner's due process rights were violated conflate the sufficiency of the notice in the indictment with double jeopardy.  The court in *Valentine* observed that "insufficient specificity in the indictment or the trial record [would not] enable Valentine to plead convictions or acquittals as a bar to future prosecutions."  395 F.3d at 634.

23

case has ever found the use of identically worded and factually indistinguishable indictments unconstitutional."  *Valentine*, 395 F.3d at 639 (Gilman, J., dissenting).

After *Valentine*, the United States Supreme Court held that a circuit court of appeals errs where it relies on its prior decisions to authorize habeas relief, as circuit court decisions do not constitute "clearly established Federal law, as determined by the Supreme Court..."  *Renico v. Lett*, 559 U.S. 766, 778-779, 130 S. Ct. 1855, 176 L. Ed.2d 678 (2010) (quoting § 2254(d)(1) of AEDPA).  In *Coles*, the Sixth Circuit was again confronted with a habeas petitioner's argument that the use of multiple, identically worded indictments violated the petitioner's right to notice and protection from double jeopardy.  577 Fed. App'x 502.  Recognizing the Supreme Court's admonishment in *Renico* that a circuit court's decision does not constitute clearly established federal law under AEDPA, coupled with the *Valentine* dissent's astute observation that no Supreme Court decision has ever found the use of identically worded and factually indistinguishable indictments unconstitutional, the *Coles* decision questioned the continued validity of *Valentine*.  *Coles*, 577 Fed. App'x at 507-508 ("[W]e doubt our authority to rely on our own prior decision—*Valentine*—to 'independently authorize habeas relief under AEDPA.'").  Rather, the *Coles* decision held that a state prisoner seeking habeas relief "must point to a Supreme Court case that would mandate habeas relief in his favor" and, by failing to do so, the petitioner had not demonstrated that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law as established by the United States Supreme Court.  *Id*.[10]

---

[10]  The *Coles* decision also found it significant that *Valentine* "based its legal reasoning on Supreme Court cases applicable to federal indictments, and a few circuit cases," two of which were

Here too, Williams has not pointed to a Supreme Court case that would mandate habeas relief in his favor.  In other words, he has cited no clearly established federal law as set forth by the United States Supreme Court suggesting that the notice he was provided – which included the nature of the offenses and the time frames in which they were committed against a minor "John Doe" – should be considered inadequate.[11]

Moreover, with respect to Petitioner's double jeopardy claim, Petitioner's brief does not demonstrate that the evidence introduced at trial failed to sufficiently differentiate between the multiple charges of which he was convicted.  In *Cowherd v. Million*, the Sixth Circuit found that "[t]he confluence of the charges, the trial testimony, and the jury verdicts thus ensures both that Cowherd could successfully plead these convictions as a bar to any future prosecution based upon these acts."  260 Fed. Appx. 781, 787 (6th Cir. 2008) (cited with approval by *Coles*, 577 Fed. App'x at 510)).  Here, for example, the testimony of the victim clearly supports a finding of at least six separate instances of anal penetration, the basis for his rape convictions.[12]  (One: Tr. 217-220; Two: Tr. 221-223; Three: Tr. 225-227; Four: Tr. 227-228; Five: Tr. 230-231; Six: Tr. 233-235; Possibly More: Tr. 236-237.)  Williams has not shown that the amended indictment and the testimony at trial would prevent him from successfully pleading

decided before AEDPA was enacted and two of which, like *Valentine* itself, predated the *Renico* decision.  577 Fed. App'x at 507-508.

[11] There is no evidence that Williams was unaware of the actual identity of the victim prior to trial based on the "John Doe" language in the indictment.  To the contrary, a Journal Entry of June 30, 2009 indicates that Williams was to have no contact with the victim, suggesting that Petitioner knew the identity of the alleged victim well before his February 2010 trial.  (Doc. No. 7-1, Exh. 2.)

[12] Even though the testimony supports six separate instances of rape, the jury convicted Williams of only five counts of rape.  (Doc. No. 7-1, Exh. 11.)

25

double jeopardy in a subsequent proceeding, if charged with the same crime(s), against the same victim, during the same time frame.[13]

As such, Williams's second ground for relief is without merit.

## C.    Ground Three: Ineffective Assistance of Trial Counsel

Petitioner asserts in ground three that his trial counsel rendered ineffective assistance.  Specifically, Williams contends that his counsel should have requested a mistrial or sought a curative instruction subsequent to the testimony of the victim's grandmother, Darnelle Hurd.  (Doc. No. 2 at pp. 7, 21-23.)  Petitioner notes that Ms. Hurd referenced his 1997 conviction despite the trial court's previous warning to the State not to mention this testimony.  (*Id*.)  Petitioner further notes that this transpired prior to the above discussed introduction of 404(B) evidence and prior to the trial court's decision as to whether such evidence would ultimately be admissible.  (*Id*.)

In assessing claims of ineffective assistance of counsel, courts apply the familiar standard of *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a petitioner to demonstrate both that his counsel's performance was deficient, and that the allegedly ineffective assistance caused him prejudice*:*

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the

---

[13]  Petitioner neglects to acknowledge that, in order to comport with the victim's testimony at trial, the counts in the indictment were renumbered to reflect conduct occurring between September 1, 2008 and January 31, 2009.  (Doc. No. 7-1, Exh. 9.)

> defense.  This requires showing that counsel's errors were
> so serious as to deprive the defendant of a fair trial, a trial
> whose result is reliable.  Unless a defendant makes both
> showings, it cannot be said that the conviction or death
> sentence resulted from a breakdown in the adversary
> process that renders the result unreliable.

*Strickland*, 466 U.S. at 687.  This standard applies "regardless of whether a [p]etitioner

is claiming ineffective assistance of trial counsel or ineffective assistance of appellate

counsel."  *Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005).

The state appellate court expressly considered Williams's argument that trial

counsel was ineffective for not objecting to certain evidence or moving for a mistrial.

After correctly setting forth the applicable *Strickland* standard, the court addressed the

ineffective assistance of trial counsel claim as follows:

> [*P32]  Williams claims his counsel was ineffective for failing to object
> when (1) a police officer read J.H.'s statement into evidence, (2) J.H.'s
> mother testified that she saw on the internet that Williams had a prior
> criminal offense, and (3) the state questioned J.H.'s mother about the
> victim's sexual orientation.

> [*P33]  We have reviewed Williams's claims and do not find that they rise
> to the level of ineffective assistance of counsel.  Even taken together,
> counsel's decision not to object could have been trial strategy; one we will
> not second-guess.[14]

*Williams II*, 2013-Ohio-4471 at ¶¶29-33.

The testimony that Williams believes should have resulted in a mistrial, or at the

very least a curative instruction, was elicited by defense counsel on cross-examination:

> [Defense Counsel]:  During the course of your relationship with Mr.
>                             Williams, your friendship, did you come to kind of

---

[14]  The petition only argues ineffective assistance of counsel in connection with Ms. Hurd's
reference to an offense she saw on the internet.  (Doc. No. 2 at pp. 21-23.)  As such, the other two
instances of alleged ineffectiveness are not before this Court.

|  | understand about Mr. Williams, how his family grew up? His circumstances growing up? |
|---|---|
| [Ms. Hurd]: | No. I knew nothing about his circumstances growing up.  I knew only what he told me, which if you are referring to the offense that he had told me about, there was an offense that had came up on the Internet.  Someone sent me -- |
| [Defense Counsel]: | Objection, your Honor. |
| THE COURT: | Hang on.  Just answer the question that is asked. |

(Doc. No. 9, Vol. I, Tr. 73.)

The apparent reference to Williams's 1997 conviction is indeed brief and vague. The Court is highly skeptical that a mere reference to an "offense," with no indication that the previous offense was of either similar nature or, for that matter, even a serious offense, warranted a motion for a mistrial or a request for a curative instruction. However, assuming *arguendo* that defense counsel's performance was deficient in this respect, Williams must still establish prejudice.

As discussed above, the testimony of A.B. concerning Williams's past similar misconduct was, according to the Ohio Supreme Court, admissible under Ohio law and also did not violate any clearly established federal law.  Given the admission of this testimony, there is not a reasonable probability that a curative instruction would have resulted in a different outcome.  As for defense counsel's failure to move for a mistrial immediately after Ms. Hurd's testimony, Petitioner cannot demonstrate that such a motion would have had even a reasonable probability of being granted given that defense counsel, in fact, did move for a mistrial at the close of the State's case after the

28

testimony of a social worker, Shawana Cornell.[15]  (Doc. No. 9, Tr. 315-316.)  The trial

court denied the motion for a mistrial, indicating that it would make sure the jurors are

properly instructed how to view the "other acts" evidence.  (Doc. No. 9, tr. 318.)  Given

the trial court's denial of a motion for mistrial after Ms. Cornell's significantly more

detailed testimony of a prior offense by Williams, which clearly implicated similar

conduct, Petitioner cannot show that trial counsel's failure to move for a mistrial after

Ms. Hurd's testimony would have affected the outcome.

Therefore, the third ground for relief is not well taken.

## D.    Ground Four: Cumulative Error

In his fourth and final ground for relief, Williams asserts that the cumulative effect

of the various alleged errors that occurred at trial deprived him of a fair trial and due

process.  (Doc. No. 2 at pp. 23-24.)   Respondent asserts that this ground for relief is

not cognizable because cumulative error is not a basis for granting habeas relief in non-

capital cases.  (Doc. No. 7 at p. 19.)

The Sixth Circuit has "held that, post-AEDPA, not even constitutional errors that

would not individually support habeas relief can be cumulated to support habeas relief."

*Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005) (*citing Scott v. Elo*, 302 F.3d 598,

607 (6th Cir. 2002); *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002) (death-penalty

decision stating, "The Supreme Court has not held that distinct constitutional claims can

---

15  Ms. Cornell testified, over defense counsel's objection, that as part of her investigation
as a social worker for the Cuyahoga County Department of Children and Family Services, she
initiated contact with Williams and spoke to him over the phone.  (Doc. No. 9, Tr. 276, 282, 285,
287-91.)  She testified that Williams had informed her that he had been "accused of this about 12
years ago, and that the charge was taken down to a misdemeanor assault."  (Tr. 291.)

be cumulated to grant habeas relief.").

Williams, as did the petitioner in *Moore*, relies upon *Walker v. Engle*, 703 F.2d 959, 963 (6th Cir.1983) for the proposition that cumulative errors, when viewed together, can form the basis for habeas relief.  (Doc. No. 2 at p. 24.)  The *Walker* decision, however, predates the AEDPA and is not Supreme Court precedent.  *See Lorraine*, 291 F.3d at 447 (noting *Walker* was pre-AEDPA and refusing to consider errors cumulatively); *accord Boynton v. Sheets*, No. 1:12-cv-263, 2012 WL 4957550 at *6 (N.D. Ohio Oct. 17, 2012) (Carr, J.)  Because Williams cites no Supreme Court precedent in his petition or traverse obligating the state court to consider alleged trial errors cumulatively, the Court cannot grant relief on this ground.

## VI. Conclusion

For the reasons given above, the petition should be dismissed with prejudice.


Date: March 30, 2016                              */s/ Nancy A. Vecchiarelli*
                                                 United States Magistrate Judge



## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**